LAW OFFICES OF
**PHILIP J. BERG**

555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531

PHILIP J. BERG

(610) 825-3134

NORMAN B. BERG, Paralegal [Deceased]

Fax (610) 834-7659

E-Mail: philjberg@gmail.com

April 11, 2013

Honorable Thomas N. O'Neill, Jr.
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
4007 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1797

Sent via Facsimile to: (215) 580-2137..................................................Total = 8 Pages

Re: *Ostella, et al v. IRBSearch, et al*, **Case No. 12-cv-07002-TON**

Dear Judge O'Neill:

    I am in receipt of this Court's Order of 04/09/2013 regarding Plaintiffs Request to further Brief Mr. Miller's arguments and Michael B. Miller, Esquire's, counsel for LexisNexis Risk Data Management, Inc. ["LNRDMI"], April 9, 2013 Response to our letter of April 4, 2013 Seeking Leave to further Brief Mr. Miller's arguments in Court before your Honor on April 3, 2013. I apologize for the delay, but was taking care of my mother in Rehab.

    Plaintiffs respect this Court's Order, however, Plaintiffs are extremely concerned with this Court having LNRDMI's letter of April 9, 2013 as the "last word" due to the fact LNRDMI's April 9, 2013 letter is filled with untruthful and patently false statements, if taken as true, prejudices the Plaintiffs. With this said, Plaintiffs respectfully request this Court to allow this letter as a response to LNRDMI's April 9, 2013 letter.

Mr. Miller admits Plaintiffs did **not** receive any reports from any of the Sankey Defendants until 2012. Mr. Miller then attempts to confuse this Court as to letters, communications and Court filings in the California case in his attempt to incorrectly portray Plaintiffs as knowing or litigating the DPPA issues currently before this Court, which is patently false.

Ostella, et al v. IRB, et al   Letter to Judge O'Neill 04.11.2013 re: LNRDMI letter of April 9, 2013

1

Honorable Thomas N. O'Neill, Jr.　　　　　　　　　　　　　　　　　　April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Two

Plaintiffs learned of all the Reed Defendants in or about early 2010 when another person, not a party to this action, filed a Brief in an unrelated case in the United States District Court, District of Columbia stating that the Sankey Defendants named in this action lost their LexisNexis account. Plaintiffs at that point were unaware of exactly which LexisNexis entity the Sankey Defendants had accounts with; it was never specified.

Judge Guilford in the California Federal Court granted Plaintiffs' Leave to Amend their Complaint. Plaintiffs Amended their Complaint in or about June 2011 adding the following Lexis companies:

1. Reed Elsevier, Inc.
2. LexisNexis, Inc.
3. LexisNexis.com
4. LexisNexis Group, Inc.
5. LexisNexis Risk and Information Analytics Group, Inc.
6. LexisNexis Seisint, Inc. d/b/a Accurint a Division of Reed Elsevier, Inc.
7. LexisNexis ChoicePoint, Inc.

The Cause of Actions against each of the above named seven (7) entities was for and stemmed from violations of the Fair Credit Reporting Laws, 15 U.S.C. Sections 1681, *et. seq.* and California Civil Codes 1786.12; 1786.20; 1785.11; 1785.14; 1785.19; and 1785.22, which are California's State equivalents to the Federal Fair Credit Reporting Act. As has been stated, all State Causes of Actions stemming from the Fair Credit Reporting Act violations were preempted by the Causes of Actions under the Federal Statutes.

Mr. Miller states, "*Plaintiffs now want to argue that they could not have known that the Accurint reports in question included DPPA-regulated material without seeing the reports*". That is not what Plaintiffs stated.

What Plaintiffs stated was LNRDMI (Accurint) continued stating none of the Sankeys had accounts with them; that none of the Sankeys obtained reports from Accurint; and once Plaintiffs received the reports from the Sankey Defendants, Plaintiffs were unaware of where they came from.[1] Plaintiffs clearly stated that the Comprehensive Reports on Plaintiffs Brent and Lisa Liberi did not have the name of any company, or where they came from.

---

[1] It should be noted, the Sankey Defendants admit in their April 9, 2013 letter to this Court, Docket No. 42, on page one [1] that they did not identify the reports or documents provided to Plaintiffs in their (the Sankeys) Initial Disclosures because they did not have a duty to do so pursuant to *Fed. R. Civ. P.* 26.

Honorable Thomas N. O'Neill, Jr.　　　　　　　　　　　　　　　　　　　April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Three

    LexisNexis has many entities, including LNRDMI (Accurint). Plaintiffs were unaware of which entity sold which report or what the reports contained. To date, Plaintiffs still have not been provided copies of all the reports sold on them. Plaintiffs were unaware that LNRDMI continued purchasing their records from Motor Vehicle Division and were reselling them to other data brokers directly and through their numerous resellers. Remember, in November 2010, Plaintiffs Lisa Ostella and Lisa Liberi were told in written form that Accurint did not have any data on them and no reports existed, which we now know was untrue.

    Plaintiffs supplied this Court with LNRDMI (Accurint's) responses to Plaintiffs Interrogatories, which Plaintiffs received in or about March 2012. This was the first time Accurint admitted that any of the Sankey Defendants obtained and received any reports that originated from LNRDMI (Accurint); and that it was in fact IRBSearch, LLC, a reseller of Accurint's, who sold the reports to the Sankey Defendants.

    In LNRDMI (Accurint's) Discovery responses they state:

> "As for Mr. Sankey, the Sankey Firm appears to maintain an account with a company called IRBSearch, LLC..."

    In fact, LNRDMI (Accurint) states in their discovery responses that the Sankey's conducted searches and obtained reports as follows:

### 1. PLAINTIFFS LISA LIBERI and BRENT LIBERI:

> "The Driver's Privacy Protection Act ("DPPA") purpose chosen was: "Use by a licensed private investigative agency, or licensed security service, for a purpose permitted above." Two [2] Gramm Leach-Bliley Act ("GLBA") purposes were chosen: "For use by persons holding a beneficial interest relating to the consumer" and "For use by persons acting in a fiduciary or representative capacity on behalf of the consumer""

> "...were run on March 16, 2009; April 6, 2009; April 15, 2009; April 19, 2009; and May 7, 2009" – again, Your Honor, these facts were **not** disclosed to Plaintiffs until in or about March (Spring) 2012.

### 2. PLAINTIFFS LISA OSTELLA and DR. FRANK OSTELLA:

> "The Driver's Privacy Protection Act ("DPPA") purpose chosen was: "Use by a licensed private investigative agency, or licensed security service, for a purpose permitted above." Two [2] Gramm Leach-Bliley Act ("GLBA") purposes were chosen: "For use by persons acting in a fiduciary or representative capacity on behalf of the consumer""

Honorable Thomas N. O'Neill, Jr.　　　　　　　　　　　　　　　　　　　　April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Four

"…were run on April 13, 2009 and April 19, 2009." again, Your Honor, these facts were **not** disclosed to Plaintiffs until in or about March (Spring) 2012

*See* Plaintiffs Request for Judicial Notice ["RJN"], Exhibit "15", at pp. 238-239.

In or about Spring 2012 was the first time that Plaintiffs had heard of IRBSearch, LLC; the first time LNRDMI (Accurint) admitted reports were searched and obtained; and the first time the DPPA and GLBA "purposes" were provided. *See* the Declaration of Lisa Policastro filed with Lexis' Motion for Summary Judgment on April 4, 2012 in Plaintiffs RJN, Exhibit "14" at pp. 231-232.

LexisNexis filed on April 4, 2012 the Declaration of Lisa Simmons with their Motion for Summary Judgment in the California Case asserting that **none** of the entities named in the California suit were governed by the Fair Credit Reporting Act ["FCRA"]. Ms. Simmons states in her Declaration:

### I. "THE ACCURINT PRODUCT LINE"

"2. Subsidiaries of Reed Elsevier Inc. are leading providers of global information driven services and solutions bearing the LexisNexis brand. One of the entities that Plaintiffs named as a Defendant in this case is "LexisNexis Seisint, Inc. d/b/a Accurint." There is no corporation known as "LexisNexis Seisint, Inc., d/b/a Accurint." However, a company then known as Seisint Inc., ultimately owned by Reed Elsevier Inc., in 2009 operated a database from which "Accurint" branded reports were prepared. That company is currently known as LexisNexis Risk Data Management, Inc. ("LNRDMI")."

"3. In 2009, LNRDMI's flagship product line was "Accurint," a suite of online information products. Reports and services bearing the Accurint brand differed in the types of information they contained, but all Accurint-branded reports were prepared from information housed in the Accurint database…"

"4. The Accurint products are known primarily as tools for locating persons, verifying identity, and detecting fraud. Accurint's subscription customers include many law enforcement agencies, debt collectors, package delivery services and law firms, among others."

"5. Accurint products contain primarily public record and commercially available information about individuals assembled from a large number of sources. The Accurint database contains information from a wide variety of sources, such as

Honorable Thomas N. O'Neill, Jr.  April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Five

> telephone directory listings, real property records, UCC and secretary of state filings, professional licenses, selected court filings, and "credit header data." The latter consists of files, usually prepared by credit bureaus that provide information such as individual names, name variants, current and former addresses and social security numbers that are displayed only in truncated form other than to a limited number of qualified customers. Persons with access to the database can conduct a "person search" based on criteria such as name or address to retrieve all names in the database matching those criteria. Users can then select a returned name to retrieve database information associated with that particular returned name. The types of information returned varies depending on the type of Accurint report selected and the number of records associated with the selected name."

## II. "THE SALE AND DISTRIBUTION OF ACCURINT PRODUCTS"

"9. Accurint reports were delivered in several different ways. LNRDMI sold Accurint reports directly to subscribers who had entered into agreements with LNRDMI or an affiliated company. None of the Taitz or Sankey Defendants had accounts with LNRDMI that gave them access to Accurint reports. In addition, LNRDMI entered into agreements with other information providers ("resellers") under which such providers could run searches against the Accurint database to prepare reports that the resellers sold to their own customers under either their own brand or the Accurint brand. One such Accurint reseller was IRBsearch, LLC ("IRB"). IRB is a reseller that sells information services to the private investigator and process server sub-market. Defendant The Sankey Firm had an account with IRB that permitted The Sankey Firm to purchase Accurint reports *from IRB*."

*See* Plaintiffs RJN, Exhibit "13" at pp. 192-195, ¶¶ 2-5 and 9.

Plaintiffs received from the Sankey Defendants in their **Initial Disclosures in 2012** the following searches and reports:

1. March 16, 2009 Accurint searches on Lisa Liberi;

2. March 16, 2009 Comprehensive Report from some unidentified source on Lisa Liberi, which Plaintiffs learned was from IRBSearch, LLC who obtained it from LNRDMI in March/April 2012; and

3. April 6, 2009 Comprehensive Report from some unidentified source on Brent Liberi, which Plaintiffs learned was from IRBSearch, LLC who obtained it from LNRDMI in March/April 2012.

Honorable Thomas N. O'Neill, Jr.  April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Six

**Plaintiffs have never received** the IRB and Accurint Reports on Plaintiffs Brent and Lisa Liberi dated April 15, 2009; April 19, 2009; or May 7, 2009. **Plaintiffs have not received** any of the reports at all on Plaintiffs Dr. Frank and Lisa Ostella or Philip J. Berg, Esquire.[2]

LNRDMI then claims that Plaintiffs were aware that LNRDMI was governed by the DPPA and was aware that LNRDMI furnished Plaintiffs driver's license information. This is patently false.

Exhibit "B" to Mr. Berg's Declaration is a letter addressed to James McCabe, Esquire. Mr. Berg was explaining why he would **not** dismiss the LexisNexis entities; he was **not** addressing anything regarding LNRDMI (Accurint) and/or their potential violations of the DPPA because Mr. Berg was unaware of these violations. In fact, the letter addresses and provides Exhibits pertaining to the FCRA.

Moreover, Mr. Berg stated Neil Sankey claimed to have a copy of Lisa Liberi's old California Driver's License on a radio show. Plaintiffs were unaware of where Neil Sankey obtained this from or which Lexis entity provided it. Nowhere in Exhibit "B" is the mention of the DPPA or that the photo copy of Plaintiff Lisa Liberi's old California driver's license came from any Department of Motor Vehicle. Plaintiffs had a right to learn where the Sankeys obtained this copy of Mrs. Liberi's old California Driver's license (Mrs. Liberi has **not** resided in California since 2002). To date, Plaintiffs are still unaware of where Neil Sankey obtained a photo copy of the front of her old California driver's license and any/all other information obtained in the other reports sold to Neil Sankey, Todd Sankey and/or The Sankey Firm, Inc.

Information obtained from the Department of Motor Vehicles are **reports** containing confidential and highly confidential information on a particular person, who supplied the information to the Department of Motor Vehicles, **not** photo copies of their driver licenses.

*See* 18 U.S.C. Section 2721(a) ("In General -- Except as provided in subsection (b), a State department of motor vehicles, and any officer, employee, or contractor, thereof, **shall not knowingly disclose or otherwise make available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record.**"). ["Emphasis Added"]

---

[2] *See* fn. 1 *Supra*.

Honorable Thomas N. O'Neill, Jr.  April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Seven

LNRDMI in their "fn 2" state, "...*The reports attached to Plaintiffs' Brief as Exhibits 11 and 12 clearly indicate at the bottom of every other page that they came from Accurint and they were produced by the Sankey's, so neither fact was concealed...*" This is inaccurate and again patently false. Plaintiffs RJN Exhibits 11 and 12 are as follows:

Plaintiffs RJN **EXHIBIT "11"** are the reports Plaintiffs **received from the Sankeys in 2012**. **EXHIBIT "11"** begins at page 80 which is the first page of the Accurint search conducted March 16, 2009 on Lisa Liberi and has an arrow pointing to the fact it is governed by the DPPA; page 81 is the first page of the unidentified Comprehensive Report on Lisa Liberi dated March 16, 2009 with an arrow pointing to the fact it is governed by the DPPA, "Accurint" is nowhere to be found on this page; pages 82-87 is a full copy of the Accurint searches conducted on Lisa Liberi on March 16, 2009; and pages 88-161 is the full unidentified Comprehensive Report obtained on Lisa Liberi on March 16, 2009, **none of these pages have or show the name "Accurint"**. The Accurint searches and the Comprehensive report are two [2] separate documents.

Plaintiffs RJN **EXHIBIT "12"** is another report Plaintiffs **received from the Sankeys in 2012**. **EXHIBIT "11"** begins at page 162 and is an unidentified Comprehensive Report obtained on Brent Liberi on April 6, 2009 and none of the pages have or show the name "Accurint". Page 163 is the first page of this report and shows the DPPA purpose utilized to obtain the report.

Plaintiffs were unaware that the March 16, 2009 Accurint searches conducted on Lisa Liberi; the Comprehensive Report on Lisa Liberi and the April 6, 2009 Comprehensive Report on Brent Liberi were obtained by the Sankey Defendants from IRBSearch, LLC, who obtained them from Accurint until March/April 2012 as explained above.

Prior to March/April 2012, Plaintiffs could not have sued Accurint for DPPA violations, as the case would be dismissed for failure to name the "Indispensable Party" and Plaintiffs were unaware of where the March 16, 2009 and April 6, 2009 unidentified Comprehensive Reports and Accurint Searches run on Plaintiffs Brent and Lisa Liberi came from. Plaintiffs did not know who the actually sold the reports to the Sankeys (the indispensable party) was and again did not know whether the Accurint searches obtained by the Sankey Defendants on March 16, 2009 on Lisa Liberi came from LNRDMI (Accurint) directly or one of their resellers.

**Plaintiffs were unaware of and had never heard of IRBSearch until March/April (Spring) 2012.**

Honorable Thomas N. O'Neill, Jr.                                  April 11, 2013
Senior United States District Court Judge
**U.S. District Court, Eastern District of Pennsylvania**
Page Eight

Plaintiffs have **not** had the opportunity to litigate the DPPA issues in California or elsewhere. **The information was hidden and concealed** from the Plaintiffs by LNRDMI and the other Defendants as plead in their Complaint; in their Opposition to LNRDMI's Motion to Dismiss; in Court; and in Plaintiffs April 4, 2013 letter to this Court.

Thank you.

                                                     Respectfully,

                                                     Philip J. Berg

PJB:jb

cc:     Michael B. Miller, Esquire
        James F. McCabe, Esquire
        Mark A. Aronchick, Esquire
        Sharon F. McKee, Esquire
        *Counsel for LexisNexis Risk Data Management Inc.*

        Charles L. Rombeau, Esquire
        Frank P. Rainer, Esquire
        *Counsel for IRBSearch, LLC*

        Neil Sankey
        4230 Alamo Street
        Simi Valley, CA 93063
        *In Pro Se*

        Todd Sankey
        2470 Stearns Street, No. 162
        Simi Valley, CA 93063
        *In Pro Se*

cc:     The Sankey Firm, Inc.
        2470 Stearns Street, No. 162
        Simi Valley, CA 93063
        *Unrepresented – In Pro Se*