IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA OSTELLA, et al.          :
                                  :          CIVIL ACTION
      v.                      :          No. 12-7002
                                  :
IRBSearch, LLC, et al.         :

O'NEILL, J.                                          October 24, 2013

## <u>MEMORANDUM</u>

Plaintiffs in this action, Lisa Ostella, Lisa Liberi, Brent Liberi, Frank M. Ostella and

Philip J. Berg,[1] allege that defendants IRBSearch, LLC and Lexis Nexis Risk Data Management,

Inc.[2] (LNRDMI), through an account belonging to defendants Todd Sankey and The Sankey

Firm, Inc., provided defendant Neil Sankey with plaintiffs' allegedly personal and confidential

information even though Neil Sankey did not have a permitted purpose for use of that

information.  <u>See</u> Compl. ¶¶ 70-85.  Plaintiffs contend that, with Neil Sankey's assistance, non-

party Orly Taitz used this personal and confidential information "to harm and harass" them.  <u>Id.</u>

¶ 69.  Now before me are:  (1) LNRDMI's motion to dismiss and to transfer venue as to any

remaining claims (Dkt. No. 21); (2) a motion to dismiss for lack of jurisdiction filed by Neil

Sankey, Todd Sankey and The Sankey Firm[3] (Dkt. No. 22); and (3) IRBSearch's motion to

dismiss for failure to state a claim and to transfer venue as to any remaining claims (Dkt. No.

25).  Upon consideration of defendants' motions, all responses and replies thereto, after oral

---

[1]     At the time that the relevant motions, responses and replies were filed and on the date of the oral argument, Mr. Berg represented himself and the other plaintiffs.  He has since been suspended from the practice of law in this Court for a period of two years, effective thirty days from June 19, 2013.  <u>See</u> <u>In the Matter of Philip J. Berg</u>, No. 13-mc-0160 (E.D. Pa. Aug. 12, 2013).  On October 3, 2013, Mark A. Marino was admitted pro hac vice and "will be substituting his appearance for counsel for Plaintiff[s]."  Dkt. Nos. 55 and 56.

[2]     LNRDMI was formerly known as Seisint, Inc. and does business as Accurint Inc. Compl. ¶ 8.

[3]     Neil and Todd Sankey are proceeding pro se.  The Sankey Firm is unrepresented.

argument on defendants' motions[4] and for the reasons that follow, I will dismiss plaintiffs' claims against LNRDMI and the Sankey defendants and will deny IRBSearch's motion to dismiss and to transfer venue.

**BACKGROUND**

I.    **Plaintiffs' Complaint**

Plaintiffs' complaint, filed on December 14, 2012, alleges eight counts:  (1) against all defendants, violation of the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721, et seq.; and against defendants LNRDMI and IRBSearch, (2) defamation; (3) defamation by innuendo; (4) violation of § 1798.53 of the California Information Practices Act; (5) violation of § 1798.85 of the California Information Practices Act; (6) invasion of privacy; (7) unfair and deceptive business/trade practices; and (8) gross/willful negligence.  Compl. ¶ 86-165.

Plaintiffs allege that in 2009, non-party Orly Taitz contacted Neil Sankey, a private investigator, and asked him to perform background checks on plaintiffs and their families.  Id. at ¶ 69.  Plaintiffs contend that in March, April and May, 2009, Neil Sankey, using the Sankey Firm's IRBSearch account, obtained private information about plaintiffs.  Id. at ¶ 63.  The private information, including plaintiffs' names, Social Security numbers, birthdates, addresses, employment histories and phone numbers was allegedly obtained from Accurint reports compiled by LNRDMI.  Id. at ¶ 72.  Plaintiffs assert that IRBSearch obtains driver and vehicle registration information through LNRDMI, who obtains the information pursuant to contracts it entered into with the departments of motor vehicles in, inter alia, California, New Jersey, New Mexico, North Carolina and Pennsylvania.  Id. at ¶¶ 22, 36, 89.  Plaintiffs contend that

---

[4]    The Sankey defendants did not appear at the April 3, 2013 oral argument.  See Dkt. No. 43 at 43:23-24 ("the Sankeys have submitted, by their letter, that they're going to submit their case on their brief").

IRBSearch obtained the private information from LNRDMI without having a permissible purpose to use the information. Id. at ¶ 71. They further contend that the Sankey defendants did not have a permissible purpose to use the information and that neither IRBSearch nor LNRDMI appropriately verified that the Sankey defendants would use the information for a permissible purpose. Id. at ¶¶ 66-68. Plaintiffs allege that Neil Sankey "knowingly obtained Plaintiffs['] confidential reports, including Accurint Reports from IRB governed by the DPPA to injure and harm the Plaintiffs on behalf of Orly Taitz." Id. at ¶ 70. They further allege that their "personal and confidential information has been disseminated throughout the Internet, mail, 3rd party outreach, to millions of individuals and businesses, including internationally, and over radio broadcasts with call outs to followers and supporters [of Orly Taitz] to harm and harass the Plaintiffs." Id. at ¶ 69. Plaintiffs allege that as a result of the distribution of the information sourced by Neil Sankey through IRBSearch and LNRDMI, they have suffered various injuries including, inter alia, identity theft, stalking, harassment, "cardiac complications and other health complications requiring numerous paramedic visits and hospitalization," "lost time off work," loss of business clientele and a loss of property value "when they were forced to sell [a home] and move in a hurry to protect their family." Id. at ¶ 76. Plaintiffs seek damages as a result of their alleged injuries. See, e.g., id. at p. 54-55. They also seek injunctive relief requiring, inter alia, "the removal of all of Plaintiffs['] private information and false allegations posted all over the Internet . . . ." Compl. at p. 56.

## II.     The Prior Litigation[5]

On May 4, 2009, certain of the plaintiffs in the instant action – Lisa Liberi, Philip Berg

_____

[5]     The Court may take judicial notice of public records including court filings without converting defendants' motions into motions for summary judgment. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009); Pearson v. Tanner, 870 F.Supp.2d 380, 382 (E.D. Pa. 2012).

and Lisa Ostella – and along with other plaintiffs filed a complaint in this Court against, inter alia, Orly Taitz, a Taitz political organization, Neil Sankey, The Sankey Firm and Sankey Investigations, Inc.  See Liberi v. Taitz, No. 09-cv-1898 (E.D. Pa.).  On June 23, 2010, responding to the plaintiffs' emergency motion to transfer venue, my colleague, Judge Eduardo Robreno, severed that case into two separate actions, transferring the claims pending against Taitz, the Taitz political organization, Neil Sankey, The Sankey Firm and Sankey Investigations, Inc. to the Central District of California.  See Liberi v. Taitz, No. 09-cv-1898, at Dkt. No. 124 (E.D. Pa. June 23, 2010).  The plaintiffs filed an amended complaint in the California action on June 17, 2011.  See Liberi v. Taitz, No. 11-cv-485 at Dkt. No. 231 (C.D. Cal. June 17, 2011). The amended complaint added new defendants, including LexisNexis Seisint, Inc.  Id.  LNDRMI contends that no such entity ever existed, but the parties proceeded as if the California amended complaint had named as a defendant LNRDMI, formerly known as Seisint, Inc.  Dkt. No. 22-1 at ECF p. 9.[6]

The plaintiffs' claims in the California amended complaint were based on their allegations that in 2009:  (1) Orly Taitz contacted Neil Sankey, a private investigator, to conduct background checks on Liberi and Ostella.  Cal. Am. Compl., Dkt. No. 22-10 at ¶¶ 31, 66-67, 135; (2) without the plaintiffs' permission, and without a permissible purpose, Neil Sankey obtained Accurint reports regarding the plaintiffs from a company called Intelius, Inc., id. at ¶ 155; (3) Intelius obtained information in the Accurint reports from LNRDMI without a permissible purpose and without the plaintiffs' permission, id. at ¶¶ 152, 155-164; (4) before selling the information to the Sankey defendants, neither Intelius nor LNRDMI verified that the Sankey defendants would not use the information for an illegal purpose, id.; (5) the information

---

[6]        Plaintiffs do not dispute this contention.

contained in the materials supplied by Intelius and LNRDMI, which had been sourced from a wide range of public records, constituted a "consumer report" under the Fair Credit Reporting Act, id. at ¶ 146-151; and (6) Neil Sankey and Taitz improperly publicly distributed the information. Id. at 139-140. The California plaintiffs claimed that they and their families were harmed by the improper distribution of their allegedly private information. See, e.g., id. at ¶¶ 140-141.

In their lengthy California amended complaint, the plaintiffs asserted claims for intrusion upon seclusion, public disclosure, false light, defamation per se, slander, libel per se, intentional and negligent infliction of emotional distress, res ipsa loquitur negligence, and violations of the California Information Privacy Act, the California Business and Professions Code, the Fair Credit Reporting Act (FCRA) and its California state law analogue, the California Consumer Credit Reporting Agencies Act (CCRA). See Dkt. Nos. 22-10 and 22-11. On October 17, 2011, the District Court for the Central District of California granted in part a motion to dismiss filed on behalf of LNRDMI (and related parties), dismissing the non-FCRA/CCRA claims[7] against them, holding that the dismissed claims were preempted by the FCRA and the CCRA and further, that even if the plaintiffs sought to avoid preemption by dismissing their FCRA claims, the plaintiffs' claims would be barred pursuant to the Communications Decency Act, 47 U.S.C. § 230 et seq. See Dkt No 22-12 at ECF p. 22.

On December 21, 2011, the California District Court denied the California plaintiffs' request for leave to file a motion for leave to file a second amended complaint. Dkt. No. 22-13. It explained that "[a]ny such amendments should have been made long ago. This case has been

---

[7]     The Court dismissed the plaintiffs' claims for intrusion upon seclusion, public disclosure, false light, defamation per se, slander, libel per se, intentional and negligent infliction of emotional distress, res ipsa loquitur negligence, and violations of the California Information Privacy Act and the California Business and Professions Code. See Dkt. No. 22-12.

pending since May 2009.  Trial is fast approaching in June 2012 . . . .  The Court finds that filing

a Second Amended Complaint at this late date would delay rather than promote the efficient

resolution of this case."  Id.

LNRDMI (and related parties) then moved for summary judgment on the California

plaintiffs' remaining claims against them, arguing that the Accurint reports at issue in the case

were not consumer reports under the FCRA and the CCRA.  On May 22, 2012, the California

District Court granted summary judgment in favor of LNRDMI on the California plaintiffs'

claims under FCRA and analogous state law.  Dkt. No. 22-18.[8]  The California District Court

held that the plaintiffs' claims failed because the LexisNexis defendants "did not operate as a

consumer credit reporting agency regarding the specific transactions at issue" and there was "not

sufficient evidence that the LexisNexis Defendants provided the [relevant] report for a FCRA

purpose, or that the reports were actually used for a FCRA purpose."  Id. at ECF p. 11, 13.

On May 29, 2012, the California plaintiffs sought leave to file a motion for relief from

the California District Court's October 17, 2011 order.  Dkt. No. 22-19.  The California District

Court denied their motion on May 31, 2012, finding "nothing justifying relief under any of the

reasons under Rule 60."  Dkt. No. 22-20.  It explained that

> the main impetus for the [California plaintiffs'] Request appears to
> be Plaintiffs' late sought discovery, and the Court's own factual
> findings leading it to grant summary judgment relief for the Reed
> Defendants on their remaining claims.  But there is no reason why
> Plaintiffs could not have conducted this discovery before, or
> otherwise discovered the cited facts with reasonable diligence.

Id.

On June 6, 2012, the California plaintiffs filed a request "for Leave to File a Motion to

---

[8] The California District Court entered an order finalizing its grant of summary judgment
in favor of LNRDMI on on September 24, 2012.  Dkt. No. 22-22.

Amend the First Amended Complaint, seeking to join IRBSearch, LLC . . . ." Dkt. No. 22-21.

The California District Court denied the request, explaining that the plaintiffs had "ample time to

conduct discovery [and] bring any motions to compel . . . ." Id.

Plaintiffs filed the instant action on December 14, 2012. Dkt. No. 1.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action

for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When

reviewing a motion to dismiss, "courts accept all factual allegations as true, construe the

complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted). The question is not

whether plaintiffs will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir.

2007). Instead, for plaintiffs' claims to survive defendants' motions to dismiss, their "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007).

## DISCUSSION

## I.     Claims Against LNRDMI

LNRDMI asserts that plaintiffs' claims against it must be dismissed, arguing that

"Plaintiffs are trying to relitigate in this Court claims that they already have litigated (and) lost in

California." Dkt. No. 32 at ECF p. 2; see also Dkt. No. 22-1 at ECF p. 8 (arguing plaintiffs'

claims against LNRDMI are "barred by the doctrine of *res judicata*"). I agree.

Res judicata[9] bars claims or defenses that were or could have been raised in a prior proceeding.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  "Although res judicata is an affirmative defense for a defendant to plead, . . . dismissal [under Rule 12(b)(6)] may be appropriate when it is obvious, either from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim."  Shah v. United States,  No. 13-2383, 2013 WL 5421992, at *2 (3d Cir. Sept. 30, 2013), citing Fed. R. Civ. P. 8(c); Jones v. Bock, 549 U.S. 199, 215 (2007).

Claim preclusion precludes relitigation of "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  Brown v. Felsen, 442 U.S. 127, 131 (1979).  It "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding."  CoreStates Bank, N.A. v. Huls Am. Inc., 176 F.3d 187, 194 (3d Cir. 1999) (emphasis in original) (citation omitted).  The purpose of claim preclusion is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  "The preclusive effect of a federal-court judgment is determined by federal common law."  Taylor v. Sturgell, 553 U.S. 880, 891 (2008).  To prevail on a motion seeking to invoke the doctrine of claim preclusion, defendants must show "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010) (citations omitted).

---

[9]    "The term "res judicata" has both a broad and a narrow meaning.  Narrowly, . . . it refers only to claim preclusion.  [The Court's] use of the term in this opinion likewise relates only to the claim preclusion aspect of res judicata doctrine."  Venuto v. Witco Corp., 117 F.3d 754, 758 (3d Cir. 1997).

## A. Final Judgment

LNRDMI first asserts that "there can be no question that LNRDMI obtained valid final judgments on the merits as to all the claims against [it] in the California Action." Dkt. No. 22-1 at ECF p. 14. A "dismissal for failure to state a claim under [Rule] 12(b)(6) is a judgment on the merits" for purposes of claim preclusion. Federated Dep't Stores, 452 U.S. at 399 n.3 (internal quotations and citations omitted). It is also "clear that summary judgment is a final judgment on the merits sufficient to raise the defense of res judicata in a subsequent action between the parties." Hubicki v. ACF Indus., Inc. 484 F.2d 519, 524 (3d Cir. 1973).

Plaintiffs contend that because "[t]he California District Court [d]ismissed all counts except for the FCRA claims [by finding that] the other Causes of Action were preempted by the FCRA . . . , these claims were dismissed by a technicality and not based on the merits." Dkt. No. 27 at ECF p. 11 (emphasis omitted). I disagree. Contrary to plaintiffs' contention, for purposes of claim preclusion I find that the California District Court's dismissal of their non-FCRA and non-CCRA claims on preemption grounds is sufficient to constitute a final judgment on the merits. See, e.g., Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 172 (3d Cir. 2004) (finding there was a final judgment on the merits for purposes of claim preclusion where state law claims had been dismissed as preempted by ERISA). The California District Court held that even if the plaintiffs had been permitted to amend their complaint to avoid FCRA preemption by dropping their FCRA claims, their claims would have still been barred under the Communications Decency Act. Dkt. No. 22-12 at ECF p. 18-22 ("[T]he Court now finds there is no possible way for Plaintiffs to cure the deficiencies in the dismissed allegations."). LNRDMI has met its burden to establish a final judgment on the merits on the claims litigated against it in the California action.

**B.      Same Parties or Parties in Privity**

LNRDMI also contends that, for purposes of claim preclusion, there "can be no dispute that the same parties were involved in the California action." Dkt. No. 22-1 at ECF p. 14. Lisa Ostella, Lisa Liberi and Phillip J. Berg were named as plaintiffs in the California Action. Plaintiffs do not dispute that LNRDMI, although misidentified, was a defendant in the California Action, as were the Sankey defendants. They do note that "IRB was not named in the California Case as a Defendant . . . nor were Brent Liberi [(Lisa Liberi's husband)] and Dr. Frank Ostella [(Lisa Ostella's husband)] named as Plaintiffs." Dkt. No. 27 at 12.

"[T]he claims of a person who was not party to a prior suit may be barred when that person stands in privity with a party in the prior suit." Seamon v. Bell Tel. Co. of Pa., 576 F. Supp. 1458, 1460-61 (W.D. Pa. 1983), aff'd, 740 F.2d 958 (3d Cir. 1984) (citations omitted). "Privity 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.'" Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004), quoting E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990). The addition of the spouse-plaintiffs – Brent Liberi and Frank Ostella – as plaintiffs is thus not sufficient to bar preclusion of plaintiffs' claims as against LNRDMI. Nor is the addition of IRBSearch as a defendant. "The essence of the cause of action . . . is not altered by the addition of more parties." Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir. 1988).

**C.      Same Cause of Action**

LNRDMI argues that in this action, plaintiffs are "attempt[ing] to re-litigate claims that already have been litigated in the California action." Dkt. No. 22-1 at ECF p. 15. Plaintiffs counter that "[t]his case solely pertains to violations of the DPPA" and that "the California case has nothing at all to do with the within Action or DPPA violations by the LNRDMI and the other

Defendants." Dkt. No. 27 at 13.

For purposes of determining whether claim preclusion applies, the Court "take[s] a 'broad view' of what constitutes the same cause of action." Sheridan v. NGK Metals Corp., 609 F.3d 239, 261 (3d Cir. 2010) (citations omitted). "Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims, although a clear definition of that requisite similarity has proven elusive." Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp., 688 F.2d 166, 171 (3d Cir. 1982); see also Duhaney, 621 F.3d at 348 (same). Relevant considerations include "whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." United States v. Athlone, Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984); see also Duhaney, 621 F.3d at 348 (same). "[T]he mere inclusion of a new cause of action in a subsequent complaint will not rescue a lawsuit from res judicata where the underlying events that give rise to the new allegations are essentially the same as those in the earlier action. Jarvis v. Analytical Lab Servs., 499 F. App'x 137, 138 (3d Cir. Sept. 27, 2012).

Plaintiffs argue that in the California action, it was not "ever alleged or litigated that LNRDMI was illegally obtaining and selling plaintiff's motor vehicle records and information obtained therefrom in reports governed by the DPPA in violation of the DPPA and/or that LNRDMI had illegally sold Plaintiffs['] motor vehicle reports and information therefrom in reports to IRB who then sold to additional unauthorized parties, in violation of the DPPA." Dkt. No. 27 at 14. But the only real difference between their claims against LNRDMI here and in the California action is that plaintiffs have here pled a claim under the DPPA and not under the

FCRA or the CCRA.  As LNRDMI argues, the material <u>facts</u> alleged in the complaint in this

action and the California complaint

> are the same, the documents giving rise to the alleged legal
> violations are the same, and the underlying events giving rise to the
> claims are the same.  Specifically, the allegations against LNRDMI
> in both the Complaint and the California Complaint are based on a
> series of reports about the Plaintiffs that LNRDMI is alleged to
> have sold, through a reseller (either Intelius or IRB), to the Sankey
> Defendants between March 2009 and May 2009.

Dkt. No. 22-1 at ECF p. 16, <u>citing</u> Compl. ¶¶ 65-68, 70-72; Dkt. No. 22-10 at ¶¶ 152, 155-164.

Further, as noted by LNRDMI, "[i]n both cases the Plaintiffs allege harm stemming from the

Sankey Defendants' and Orly Taitz' improper publication of their social security numbers, dates

of birth, residence information, credit data, and other so-called 'private' information obtained

from LNRDMI's reports."  Dkt. No. 22-1 at ECF p. 16, <u>citing</u> Compl. ¶¶ 69-70, 74-76; Dkt. No.

22-10 at ¶¶ 140-141; Dkt. No. 22-12 at ECF p. 2-3; Dkt. No. 22-18 at ECF p. 2-3.

Plaintiffs' assertion of a different legal theory in this action is not sufficient to bar

preclusion of their claims against LNRDMI.  "Claim preclusion . . . prohibits reexamination not

only of matters actually decided in prior case, but also those that parties might have, but did not,

assert in that action."  <u>Edmundson v. Borough of Kennett Square</u>, 4 F.3d 186, 189 (3d Cir. 1993).

Compare, for example, <u>Taggart v. Chase Bank, USA, N.A.</u>, 375 F. App'x 266, 268 (3d Cir.

2010), where the Court of Appeals for the Third Circuit affirmed the District Court's dismissal of

the plaintiff's claims on res judicata grounds, finding that the plaintiff was "merely attempting to

split a cause of action, which he is not permitted to do."  The plaintiff had previously filed a

claim asserting violations of the Truth In Lending Act, his TILA claims were dismissed as time-

bared and he then filed a second action based on the same underlying events, but alleging

additional causes of action, including claims under the FCRA, the Real Estate Settlement

Procedures Act and the Fair Debt Collections Practices Act.  Id. at 267.  The plaintiff argued that

certain of his new claims "were unknown at the time the original complaint was filed" and that

"the District Court denied him [the] opportunity to amend his original complaint to include these

violations."  Id. at 268 (internal quotations and citations omitted).  The Court of Appeals held

that the plaintiff's argument that he was not permitted to amend his original complaint to add the

claims was "unavailing" when he knew of the new claims during a three month period prior to

dismissal of the initial action, but failed to do so.  Id. at 269.  Here likewise, as is further set forth

below, plaintiffs could have asserted their DPPA claim in the California action, but failed to do

so.  For purposes of claim preclusion, I find that LNRDMI has met its burden to establish that

plaintiffs are attempting to proceed on the same cause of action here as in the California action.

See Elkadrawy v. The Vanguard Grp., 584 F.3d 169, 173-74 (3d Cir. 2009) (finding that it did

"not matter for res judicata purposes that Elkadrawy proceeds under § 1981 rather than Title

VII" as in the prior litigation because the allegations arose out of the same underlying events and

"could have been brought as part of his first complaint").

### D.    Fraudulent Concealment

In response to LNRDMI's motion, plaintiffs assert that they could not have asserted their

DPPA claim because they were unaware of the alleged violations of the DPPA "until

March/April 2012."  Dkt. No. 27 at 13.  "Claim preclusion, however, applies even where new

claims are based on newly discovered evidence, unless the evidence was either fraudulently

concealed or it could not have been discovered with due diligence."  Haefner v. N. Cornwall

Twp., 40 F. App'x 656, 658 (3d Cir. 2002); see also Borough of Lansdale v. PP & L, Inc., 426 F.

Supp. 2d 264, 307 (E.D. Pa. 2006) (same).  Plaintiffs contend that "LNRDMI and the other

Defendants purposely hid (fraudulently concealed) this information from the Plaintiffs."  Dkt.

No. 27 at 13; see also Dkt. No. 43 at 29:21-22 (arguing at oral argument that "there wasn't a judgment on the merits [in the California action] because [defendants] hid the facts from us"). They assert that "[a]t no time prior to March/April 2012 did LNRDMI provide or inform Plaintiffs or Mr. Berg that they were obtaining Plaintiffs['] motor vehicle records and reselling said reports, or that the reports they were reselling on Plaintiffs were governed by the DPPA . . . ." Dkt. No. 27 at 14. I disagree for the following reasons.

Plaintiffs' allegation that "Accurint hid from plaintiffs" the fact that information contained in its reports was derived from plaintiffs' motor vehicle records, Compl. ¶¶ 77-78, is not, without more, sufficient to demonstrate that LNRDMI fraudulently concealed that information. See Carpenter v. Ashby, No. 06-1451, 2007 WL 437847, at *4 (E.D. Pa. Jan. 25, 2007) (finding plaintiff's "bald and unsupported allegations of fraudulent concealment [were] not persuasive," particularly where "all of the facts alleged in the Complaint and Amended Complaint were known to plaintiff or could have been discovered by him through the exercise of due diligence at the time of filing the [prior] action"). Indeed, the allegations in plaintiffs' own complaint suggest that plaintiffs could have discovered they had available a cause of action pursuant to the DPPA prior to the California plaintiffs' filing of their amended complaint in the California action on June 17, 2011. Plaintiffs' complaint alleges that "Accurint discloses that all their 'comprehensive reports' contain information obtained from motor vehicle records and are governed by the DPPA." Compl. ¶ 46. Theit complaint also alleges that Accurint and IRBSearch disclose on their websites that the comprehensive reports they sell contain DPPA data, and fall within the DPPA guidelines and laws." Id. ¶ 95. Certainly the presence of such disclosures militates against a finding that LNRDMI fraudulently concealed the applicability of the DPPA to plaintiffs' claims.

Further, "Plaintiffs nowhere dispute . . . that in November 2010 (around the same time that Plaintiffs now contend that Accurint 'hid' this information from them), Accurint expressly told plaintiffs Lisa Liberi and Lisa Ostella that Accurint reports 'are subject to the . . . Federal Drivers Privacy Protection Act (18 U.S.C. § 2721, et seq.)." Dkt. No. 32 at ECF p. 5, <u>citing</u> Dkt. Nos. 22-16 and 22-17. Plaintiffs claim that on October 27 and November 1, 2010, Lisa Liberi and Lisa Ostella had requested from LNRDMI copies of records pertaining to them in Accurint's databases. Dkt. No. 27 at 15. Accurint responded to Lisa Liberi and Lisa Ostella's requests with letters on November 19 and November 22, 2010, respectively, stating, inter alia, that

> [a]lthough Accurint is not a Consumer Reporting Agency, please
> be reassured that both Accurint and any information contained in
> Accurint databases are regulated by the federal government and are
> subject to the Gramm-Leach Bliley Act (15 U.S.C. § 6801, et seq.)
> <u>and the Federal Drivers Privacy Protection Act</u> (18 U.S.C. § 2721,
> et seq.). These laws regulate who may access private non-public
> data, and the purposes for which it may be accessed.

Dkt. Nos. 22-16 and 22-17 (emphasis added). The California plaintiffs filed their amended complaint in that action on June 17, 2011, well after Lisa Liberi and Lisa Ostella had the letters from Accurint in their possession. <u>See</u> <u>Liberi v. Taitz</u>, No. 11-cv-485 at Dkt. No. 231 (C.D. Cal. June 17, 2011).

Plaintiffs argue that because the letters also stated that "the Accurint database, as of today, has no record of you in our database," Dkt. Nos. 22-16 and 22-17, that "LNRDMI falsely led Plaintiffs to believe that they did not have any type of Accurint Records or Reports on file and therefore, the DPPA and/or the Graham Leach Bliley Act would not apply to the plaintiffs." Dkt. No. 40 at ECF p. 2. I am not persuaded by this argument. As Berg himself stated in his September 25, 2011 declaration, which plaintiffs submitted (without its attached exhibits) in support of their opposition to LNRDMI's motion to dismiss, on or around March 22, 2010, Berg

spoke with someone at Lexis, informing Lexis that he wanted his clients' information "deleted and [he] wanted [his] client's [sic] opted out." Dkt. No. 28-17 at ¶ 9. Berg explained that he was then "g[iven] instructions of forms [his] clients needed to fill out to be opted out of the Lexis systems" and that his "clients complied." Id. at ¶ 10. In view of their interest in opting out, plaintiffs were certainly aware of the possibility that LNRDMI had information about them in its possession. By virtue of the November 19 and November 22, 2010 letters, plaintiffs' were thus also aware of the possibility that certain of this information was subject to the DPPA, again, long before the California plaintiffs filed their complaint in the California action on June 17, 2011.

As further support for a finding that, with due diligence, plaintiffs could have known of the potential applicability of the DPPA during the pendency of the California action, attached as Exhibit B to Berg's September 25, 2011 declaration[10] is a September 14, 2011 letter from Berg to counsel for LNRDMI stating, inter alia, that

> LexisNexis . . . also furnished Mrs. Liberi's California Driver's license information. Todd Sankey, Neil Sankey, The Sankey Firm, Orly Taitz and Yosef Taitz illegally obtained Mrs. Liberi's California Driver's License information from LexisNexis. Mr. Neil Sankey admitted this and discussed this on radio shows with other individuals. California Driver's License information is private and confidential.

Dkt. No. 41 at ECF p. 18. Plaintiffs were thus aware that Lisa Liberi had claims arising out of the California defendants' use of her driver's license information before the California District Court issued its October 17, 2011 ruling on LNRDMI's motion to dismiss in that action.

Plaintiffs have not met their burden to show that LNRDMI or any other defendant concealed any of the facts giving rise to their DPPA claims or otherwise prevented them from

---

[10] Recognizing that plaintiffs had not included copies of the exhibits to Berg's declaration with their response to LNRDMI's motion to dismiss, LNRDMI supplied the Court with a copy of this exhibit to Berg's declaration on April 9, 2013. See Dkt. No. 41.

obtaining during discovery in the California action information about the DPPA claims they

assert in this action.  Because plaintiffs' claims against LNRDMI, including their claims under

the DPPA could have been raised in the California litigation, I find that the doctrine of claim

preclusion bars re-assertion of their claims against LNRDMI in this action and I will grant

LNRDMI's motion to dismiss.

**III.    Claim Against the Sankey Defendants**

Plaintiffs' only claim against the Sankey defendants in this action is that the Sankey

defendants violated the DPPA.  Dkt. No. 1 at ¶¶ 86-97.  The Sankey defendants seek dismissal

for lack of personal jurisdiction or transfer to California.  See Dkt. No. 21.  In support of their

motion to dismiss, the Sankey defendants also argue, inter alia that

> [c]hanging the order of the named Plaintiffs to now place Ostella
> in front of Liberi and adding their husbands as bogus Plaintiffs
> does not make for a new case . . . .  There is precisely zero
> difference between this and the real case because no actions were
> taken by any of us that concerned DMV records.

Dkt. No. 42 at ECF p. 2.  The Sankey defendants further contend that "[t]he allegations of the

actions of the defendants in this lawsuit are no more than a portion of the allegations in the

California actions.  The only difference is the addition of inapplicable DPPA allegations arising

from the same acts."  Dkt. No. 30 at ECF p. 8-9.

For the same reasons that I find that the doctrine of claim preclusion bars plaintiffs'

claims against LNRDMI, I also find that plaintiffs cannot proceed with their DPPA claim against

the Sankey defendants:  (1) there was a final judgment on the merits in the California action;

(2) the prior litigation involved the Sankey defendants and the same plaintiffs or their privies;

and (3) the plaintiffs' claims that the Sankey defendants violated the DPPA by "shar[ing]

Plaintiffs private and highly restricted personal information from the reports derived from

Accurint and IRB with additional unauthorized third parties," Compl. ¶ 92, arise out of the same alleged acts and material facts as were raised in the California litigation. I will dismiss plaintiffs' claims against them.

## IV. Claims Against IRBSearch

### A. Res Judicata/Claim Preclusion

Claim preclusion does not apply to bar plaintiff's claims against IRBSearch because IRBSearch was not a party to the California action and it has not made a showing that it is in privity with a party to the California action. IRBSearch asserts that "a reading of Plaintiffs' complaint relies heavily on the contractual privity between IRB and LNRDMI to allege a case against IRB and LNRDMI." Dkt. No. 25-1. Yet at oral argument, IRBSearch conceded that it was likely that it could not "claim [it was] in privity to any party to the California suit." Dkt. No. 43 at 40:18-25 ("I think, ultimately, that's right your Honor."); id. at 41:2 ("But certainly, we are a separate entity from LexisNexis."). Even a "close enough" relationship between IRBSearch and LNRDMI would not suffice to establish privity for purposes of claim preclusion. See Taylor v. Sturgell, 553 U.S. 880, 900 (2008) ("rejecting a broad doctrine of virtual representation" that would allow for claim preclusion whenever "the relationship between a party and a non-party is 'close enough' to bring the second litigant within the judgment").

### B. Collateral Estoppel/Issue Preclusion

IRBSearch also contends that plaintiffs' claims against it should be dismissed as barred by the doctrine of issue preclusion, also referred to as collateral estoppel. Dkt. No. 25-1 at ECF p. 3. "[A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991). Issue preclusion thus

bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." Nationwide Mutual Fire Ins. Co., 571 F.3d 299, 310 (3d Cir. 2009), quoting New Hampshire v. Maine, 532 U.S. 742, 748-749 (2001).

"[T]he law of the issuing court – here, federal law – determines the preclusive effects of a prior judgment." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 145 (3d Cir. 1999); see also Burlington N. R.R. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231 (3d Cir. 1995) ("[W]e apply federal common law principles of issue preclusion since we are examining the issue preclusive effect of a prior federal court action"). Under federal common law, the following four elements must be satisfied to bar further litigation: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 247–48 (3d Cir. 2010).

> "Where a motion to dismiss is made on the basis of collateral estoppel, it is usually necessary for the court to examine the record of the prior trial, unless it appears on the face of the complaint that it is barred by issues decided in the prior adjudication. Reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel."

Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970).

As IRBSearch notes, this Court "must determine . . . what were the issues of fact litigated in the California Litigation . . . ." Dkt. No. 25-1 at ECF p. 5. In its motion to dismiss, it does not, however, identify with particularity which factual and/or legal issue or issues are allegedly precluded. Instead, it argues only that "there were extensive factual allegations and ultimate factual findings by the California District Judge in this Matter" and that the counts of the complaint other than the counts raising the DPPA claim "are identical to the issues raised in the

California Litigation." Id.  At oral argument, IRBSearch argued that the California District Court's ruling on summary judgment

> fully addresses the scope and propriety of the Accurint reports that were issued by LexisNexis and IRB was sort of a pass-through, middle man here, . . . in taking the report from LexisNexis and providing it to the other Sankey defendants.  And the Court specifically ruled on what was contained in that report and whether or not there was anything improper in its summary judgment motion.

Dkt. No. 43 at 39:10-19.  However, on the facts now before me, the California District Court's grant of summary judgment in favor of LNRDMI was based on its finding that "[t]he LexisNexis Defendants ha[d] demonstrated an absence of any genuine issue of material fact regarding whether they distributed [the California] Plaintiffs' information to [the California] Defendants 'for the purpose of furnishing consumer credit reports to third parties,'" Dkt. No. 22-18 at ECF p. 11, an essential element of the California plaintiffs' claims under the FCRA, but not a question relevant to their claims under the DPPA.

In its reply brief, IRBSearch attempts to further set forth its claimed basis for the application of issue preclusion, but asserts only that from its sale of reports based on various public records "springs the fountain head of all of Plaintiffs' allegations against Lexis and IRBSearch.  Without those reports the Plaintiff [sic] would have no alleged causes of action. The reports are central and the entire linchpin by which Plaintiffs' case exists in this Pennsylvania District Court."  Dkt. No. 52 at ECF p. 8.

Plaintiffs counter that they "are charging Defendant IRB with distinct wrongs based on IRB's direct, individual actions in this matter," Dkt. No. 53 at ECF p. 7, and that "the claims against IRB were not brought in the previous action, and they arise from substantially different circumstances and legal issues."  Id. at ECF p.8.

Keeping in mind the Court of Appeals' admonition that any reasonable doubt should be resolved against the use of estoppel, see, e.g., Kauffman, 420 F.2d at 1274, I find that the information now before me is insufficient to permit dismissal of plaintiffs' claims against IRBSearch on the basis of issue preclusion. The Court would benefit from further identification of the specific issues that IRBSearch seeks to preclude and development of the record of the California District Court proceedings with respect to those issues. IRBSearch may reassert the affirmative defense of issue preclusion in any motion for summary judgment.

**B.      Venue Transfer**

Because I find that dismissal of plaintiffs' claims against IRBSearch is not warranted on the basis of claim or issue preclusion, I will consider IRBSearch's motion to transfer venue to the Central District of California. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[11] 28 U.S.C. § 1404(a). The purpose of this section is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960).

The Court has "broad discretion to determine, on an individualized case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). In undertaking this transfer analysis, "there is no definitive formula or list of . . . factors to consider," but the Court of Appeals' decision in

---

[11]      Venue would be proper in the Central District of California for plaintiffs' claims against IRBSearch pursuant to 28 U.S.C. §§ 1391(b) and (c). See Compl. ¶ 13 (alleging that the "conduct giving rise to the claims that are the subject of this action occurred in . . . the State of California"). The Central District of California could exercise subject matter jurisdiction over this action to the same extent as this Court.

Jumara identified public and private interests that courts may consider when deciding motions to transfer.  Id. at 879.  The burden of establishing the need for transfer rests with the movant.  Id. IRBSearch must show that "all relevant things considered, the case would be better off transferred to another district."  In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotations and citation omitted); see also Bennett v. Itochu Intern., Inc., No. 09-1819, 2009 WL 2569259, at *3 (Aug. 17, 2009) ("the defendant bears the burden of showing that, on the balance of identified public and private factors, considerations weigh 'strongly' in favor of transfer") (citation omitted).

## 1.    Private Interests

Relevant private interests to consider in weighing whether venue transfer is appropriate include:

> [p]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara, 55 F.3d at 879 (internal citations omitted).

## a.    Parties' Forum Preference

Plaintiffs' choice of forum, in this matter, the Eastern District of Pennsylvania, is typically afforded significant deference.  See Jumara, 55 F.3d at 879 (observing that plaintiff's choice of venue "should not be lightly disturbed").  But when a plaintiff does not have a significant connection to the forum, this Court has discounted the weight afforded plaintiff's choice of venue.  See Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 190 (3d Cir. 2008). Upon review of the allegations in the complaint, Berg's residence and office are plaintiffs' only

contact with the Eastern District of Pennsylvania. Compl. ¶¶ 2-6; 13.

IRBSearch has expressed its preference for having this action transferred to the Central District of California, the venue of the prior action involving certain of the plaintiffs. See Dkt. No. 25-1 at ECF p. 6. Courts give "less deference [to a plaintiff's choice of forum] when a related action is pending in a different forum." QVC, Inc. v. Patiomats.com, LLC, No. 12-3168, 2012 WL 3155471, at *4 (E.D. Pa. Aug. 3, 2012). The Court in the Central District of California has knowledge of the issues underlying plaintiffs' claims in this action and an understanding of the import of its rulings in the prior litigation on the claims here at issue. However, given that the claims against LNRDMI and the Sankey defendants will be dismissed and that the California District Court has previously denied plaintiffs' efforts to join IRBSearch as a party to the prior action, I find that this is not a case where there is a "strong likelihood of consolidation with a related action," such that transfer would be warranted "even where other Jumara factors, such as the convenience of parties and witnesses would suggest the opposite." Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009).

Comparing the interests of the parties remaining in this case, I find that plaintiffs' choice to litigate in the Eastern District of Pennsylvania is entitled to deference.

### b.    Location Where the Claims Arose

Plaintiffs allege that IRBSearch operates the Internet site irbsearch.com. Compl. ¶ 7. As is alleged in plaintiffs' complaint, the events giving rise to plaintiffs' claims against IRBSearch "occurred in the Commonwealth of Pennsylvania and the State of California." Id. ¶ 13. This factor does not weigh in favor of transfer.

### c.    Convenience of the Parties

Given the dismissal of plaintiffs' claims against LNRDMI and the Sankey defendants, no parties remaining in this action are located in California.  Berg is alleged to reside in Pennsylvania.  Compl. ¶ 13.  Lisa and Frank Ostella are alleged to reside in New Jersey.  Id. ¶¶ 2, 5.  Lisa and Brent Liberi are alleged to reside in New Mexico.  Id. ¶¶ 3, 4.  IRBSearch is alleged to be incorporated in the State of Florida and to conduct business in "Pennsylvania and all through the United States and Internationally."  Id. ¶ 7.  IRBSearch does not contend that Pennsylvania is any less convenient a forum for it than is California.  This factor does not weigh in favor of transfer.

### d.    Availability of Non-Party Witnesses for Trial

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  Jumara, 55 F.3d at 879.  Of particular concern, then, are fact witnesses who may not appear of their own volition in the venue at issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45.  See ADE Corp. v. KLA–Tencor Corp., 138 F. Supp. 2d 565, 569 (D. Del. 2001).

IRBSearch rests on LNRDMI's assertions that Orly Taitz and certain of the Sankeys "would not be amenable to compulsory process if the case were to stay in Pennsylvania."  Dkt. No. 22-1 at ECF p. 26.  Plaintiffs point to "their intent to call numerous witnesses who are located in Philadelphia or its surroundings and who would be unable to travel to California for trial . . . includ[ing], but not limited to employees from the Commonwealth of Pennsylvania Department of Transportation and from the New Jersey Motor Vehicle Division."  Dkt. No. 35 at

ECF p. 11. Plaintiff also notes that LNRDMI "has its main headquarters . . . close by in New York along with their counsel . . . ." Id.

With little in the record as to the unavailability in Pennsylvania of non-party witnesses who will actually be called to testify at trial, I find this factor to be neutral.

### e.      Location of Books and Records

The location of books and records is not a significant factor in this case and does not weigh in favor of transfer. Plaintiff contends that relevant "documents and files are located in New Jersey, Pennsylvania and New York . . . ." Dkt. No. 35 at ECF p. 12. "Any books or records located outside of this district that would be needed at trial could easily and inexpensively be transported to this district either electronically or physically." Bennett, 2009 WL 2569259, at *4.

### 2.      Public Interests

Public interests to consider in weighing whether venue transfer is appropriate include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, at 879–80.

### a.      Enforceability of Judgment

There is no suggestion that a judgment against IRBSearch would be unenforceable in either the Eastern District of Pennsylvania or the Central District of California. This factor is neutral.

### b.      Practical Considerations

I should also consider "practical considerations that could make the trial easy,

expeditious, or inexpensive." Jumara, 55 F.3d at 879. Here, the primary practical consideration at play is the prior existence of the California Action. In LNRDMI's motion, upon which IRBSearch relies, LNRDMI asserts that transfer to the Central District of California would promote judicial efficiency because "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Dkt. No. 22-1 at ECF p. 27, quoting Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960). While there is overlap between both cases, IRBSearch has not established that plaintiffs' case against it involves "precisely the same issues" as were raised in the California action. Further, with the dismissal of plaintiffs' claims against LNRDMI and the Sankey defendants, any similarities between this action and the California action are not as significant. This factor is neutral.

### c.   Administrative Difficulties of Getting Case to Trial

Next I consider the "relative administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879. In LNRDMI's motion, upon which IRBSearch relies, LNRDMI states that "the Eastern District of Pennsylvania had nearly twice as many civil cases pending as compared to the Central District of California . . . , but with about 20% fewer District Court judges (including judges on senior status)." Dkt. No. 22-1 at ECF p. 28. The differences are not so great as to justify this factor being given substantial weight, although what weight it receives weighs in favor of transfer.

### d.   Local Interests and Public Policies of the Fora

Pennsylvania has an interest in this action given that one plaintiff – Berg – is a citizen of Pennsylvania. No plaintiffs are alleged to be current citizens of California. IRBSearch, the only remaining defendant, is headquartered not in California, but in Florida.

Pennsylvania also has an interest in this action based on plaintiffs' assertion of a claim against IRBSearch pursuant to the Commonwealth's consumer protection and deceptive trade practice statute. Conversely, California has an interest in this matter to the extent that plaintiffs assert against IRBSearch violations of provisions of the California Information Practices Act and the California consumer protection and deceptive trade practice statute in California. On balance, I find that this factor does not weigh in favor of transfer.

### e. Familiarity With State Law in Diversity Cases

To the extent that plaintiffs allege violations of provisions of the California Information Practices Act along with violations of the relevant consumer protection and deceptive trade practice statutes in California, New Mexico, New Jersey and Pennsylvania, Compl. ¶ 11-140, 150-156, this factor weighs slightly in favor of transfer.

### 3. Conclusion Regarding Transfer Considerations

All in all, after weighing the relevant public and private considerations, I find that IRBSearch has not met its burden to establish that, all relevant things considered, this action would be better off if it were transferred to the Central District of California. IRBSearch's motion to transfer will therefore be denied.

An appropriate Order follows.