IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA OSTELLA, et al. | : | |
| | : | CIVIL ACTION |
| v. | : | No. 12-7002 |
| | : | |
| IRBSearch, LLC | : | |

O'NEILL, J.                                                                                  August 5, 2014

## MEMORANDUM

Among a number of motions now pending in this matter is a motion by defendant IRBSearch, LLC (Dkt. No. 72) in which it "asks the court to reconsider its prior ruing on IRBsearch's request for transfer of venue (Dkt. No. 25) in light of the changed factual and legal basis alleged by Plaintiffs [Lisa Ostella, Lisa Liberi, Brent Liberi, Frank M. Ostella and Philip J. Berg] as to their causes of action as contained in the Amended Complaint . . . ." Dkt. No. 72 at ECF p. 1.  IRBSearch asserts that "transfer of venue to IRBSearch's home venue, Northern District of Florida is appropriate, or dismissal of the Amended Complaint for improper venue pursuant to 28 U.S.C. § 1391(b) is also appropriate."  Id.  For the reasons that follow, I will grant the motion.

## BACKGROUND

On October 25, 2013, I entered an order granting motions to dismiss filed in this action by Lexis Nexis Risk Data Management, Inc. (LNRDMI)[1], Neil Sankey, Todd Sankey and the Sankey firm.  Dkt. No. 58.  IRBSearch, a Florida limited liability company located in

---

[1]     LNRDMI does business as Accurint Inc.  Dkt. No. 1 at ¶ 8.

Tallahassee, is the only remaining defendant. Dkt. No. 68 at ¶ 11. IRBSearch operates a website – irbsearch.com – that allows subscribers to search for data records provided by third parties, including information "derived from motor vehicle records, financial records, other data brokers, and governmental agencies . . . ." See Id. at ¶ 11, 28, 30.

Plaintiffs filed an amended complaint on March 10, 2014, Dkt. No. 68, after having obtained leave to amend subsequent to their motion seeking leave to "tailor the wording of the Complaint to reflect the current state of the litigation, and add facts obtained during discovery to date." Dkt. No. 64-1 at ECF p. 1.[2] In their amended complaint, plaintiffs assert claims against IRBSearch for: "(1) violation of the Driver's Privacy Protection Act, (2) Defamation, (3) Defamation by Innuendo, (4) Violation of § 1798.53 of the California Information Practices Act, (5) Violation of § 1798.85 of the California Information Practices Act, (6) Invasion of Privacy, and (7) Gross/Willful Negligence." Dkt. No. 71-1 at ECF p. 3, citing Dkt. No. 68 at ¶¶ 99-167. Plaintiffs contend that IRBSearch, through an account belonging to dismissed defendant The Sankey Firm, Inc., provided dismissed defendant Neil Sankey with plaintiffs' allegedly personal and confidential information even though Neil Sankey did not have a permitted purpose for use of that information. See, e.g., Dkt. No. 68 at ¶¶ 49-50, 61, 64-67, 70-72. Plaintiffs contend that, "as a result of IRB's illegal obtainment and disclosure and the Sankey's illegal obtainment and disclosure of Plaintiffs' private and highly restricted private information, plaintiffs have suffered and continued to suffer" a long list of alleged harms, including, inter alia, "full identity theft repeatedly; they were and continue to be stalked; harassed; [and] their lives were endangered and

---

[2]   Plaintiffs' amended complaint rendered moot IRBSearch's November 27, 2013 amended answer to plaintiffs' initial complaint.

-2-

threatened . . . ."³ Id. at ¶ 77.

**DISCUSSION**

**I.     Timeliness**

Plaintiffs assert untimeliness as a defense to IRBSearch's motion, which was filed on March 27, 2014 and titled "Motion Amending and Requesting the Court to Reconsider Motion to Transfer Venue (Dkt. No. 25) or to Now Find Venue Improper." See Dkt. No. 76 at ECF p. 17; Dkt. No. 72. If IRBSearch's motion were, in fact, seeking reconsideration of my prior determination on venue transfer, a decision rendered on October 24, 2013, see Dkt. Nos. 57 and 58, I would agree with plaintiffs that the motion is untimely, either under Local Rule 7.1(g) or under Rule 59(e) of the Federal Rules of Civil Procedure. See E.D. Pa. Local Rule 7.1 (g) ("Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned; other than those governed by Federal Rule of Civil

---

³   Interestingly, although Berg is lumped with the non-resident plaintiffs in the amended complaint's references to "plaintiffs" in the litany of generalized harms that they claim to have suffered as a result of defendant's alleged conduct, the amended complaint does not include a single allegation of a specific harm that was specifically suffered by Berg alone. Plaintiffs allege generally that:

> As a result of IRB's illegal obtainment and disclosure . . . of Plaintiffs' private and highly restricted private information, Plaintiffs have suffered and continue full identity theft repeatedly; they were and continue to be stalked harassed their lives were endangered and threatened; strange men appeared at Plaintiffs' homes; . . . Plaintiffs were falsely accused of crimes; Plaintiffs lost their business clientele; . . . Plaintiffs have been defamed and defamed by innuendo all over the Internet as a result of the incorrect data contained in the reports sold by Accurint and IRB; their privacy was invaded . . . .

Dkt. No. 68 at ¶ 77. They claim specifically that "Frank and Lisa Ostella's pet rabbits were gutted . . . ," that "Lisa Liberi suffered cardiac complications and other health complications requiring numerous paramedic visits and hospitalization;" that "Frank and Lisa Ostella took a substantial loss on their property," and that "Brent Liberi lost time off work." Id. Nowhere do plaintiffs allege with any particularity any harm allegedly suffered by Berg.

Procedure 59(e)."); Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

IRBSearch's motion, however, was clearly filed in response to plaintiffs' filing of their amended complaint on March 10, 2014 and is more properly viewed as a motion to dismiss the amended complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. See Dkt. No. 72 at ECF p. 3, ¶ 11 ("the various factors which the Court analyzed previously as to transfer of venue have been significantly altered by the Amended Complaint . . ."). I am permitted to reexamine whether venue in this district is still appropriate in light of the changes to plaintiffs' allegations and claims in the Amended Complaint. See Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am., No. 108-153, 2010 WL 317472, at *3 (S.D. Ga. Jan. 25, 2010) ("[W]hen parties are granted leave to amend their pleadings, . . . and the amendment adds a new matter that gives rise to a new, previously inapplicable Rule 12 motion, the responding party may assert the new Rule 12 defense by motion or responsive pleading."); 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & P. § 1347 (3d ed. 2004) ("if the plaintiff has raised new matter in the amended complaint that may be vulnerable to one of the defenses enumerated in Rule 12(b), the defendant may assert that defense by a pre-answer motion or in the responsive pleading even if she did not assert it initially").

A motion asserting improper venue pursuant to Rule 12(b)(3) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Any response to plaintiffs' amended complaint was not required until "21 days after [IRBSearch was] served with the [amended] complaint . . . ." Fed. R. Civ. P. 12(a)(1)(A)(i). IRBSearch filed the instant motion 17 days after plaintiffs filed their amended complaint. Accordingly, I decline to deny IRBSearch's motion as untimely.

## II.     Venue[4]

Plaintiffs' amended complaint alleges that "[v]enue is proper, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in this district." Dkt. No. 68 at ¶ 14.  IRBSearch contends that "the Amended Complaint has now made it appropriate to find that venue is improper under 28 U.S.C. § 1391." Dkt. No. 72-1 at ECF p. 5. As is further set forth elsewhere in this Opinion, I agree with defendant that plaintiffs' allegations of contacts with this district are insufficient to meet the substantiality requirement of § 1391(a)(2). See Cottman Transmission Systems v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) ("Events or omissions that might only have some tangential connection with the dispute in litigation are not enough" to support a finding that venue is proper.).

I must also consider, however, whether venue might be proper under § 1391(b)(1). Venue would be proper under § 1391(b)(1) if IRBSearch "resides" in this district. 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . ."). For purposes of venue, IRBSearch "shall be deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to" this action. 28 U.S.C. § 1391(c). Although IRBSearch asserts that "[p]ersonal jurisdiction is not what [it] is asking this [Court] to examine, rather venue," Dkt. No. 79 at ECF p. 4, I cannot make a determination as to whether venue is proper in this District under Section 1391(b)(1) without determining whether IRBSearch

---

[4] In their response to defendants' motion, plaintiffs assert that they "mistakenly removed [certain jurisdictional] allegations [in their amended complaint], including the omission of allegations of diversity jurisdiction." Dkt. No. 76 at ECF p. 9 n.4, citing Dkt. No. 68 at ¶¶ 12-14. They contend that "IRB certainly cannot deny the fact that the parties are diverse" and that "the removal of these allegations makes no difference from a legal standpoint" but "seek[ ] to add them back if the Court deems it necessary or proper." Dkt. No. 76 at ECF p. 9 n.4. I will regard the amendment as having been made and the jurisdictional allegations realleged.

is subject to personal jurisdiction in this District.

It is not evident from the record now before me whether the Court has personal jurisdiction over IRBSearch by virtue of its contacts with this District.  Cf. Henning v. Suarez Corp., 713 F. Supp. 2d 459, 470 (E.D. Pa. 2010) (finding the defendant's contacts with the Eastern District of Pennsylvania were insufficient to support a finding that the defendant resided in this District where the defendant sold a variety of products through its websites and advertised its products in this District, but did not have an office, distribution center, employees or any other physical presence in this District).  To that end, in their response to defendant's motion, plaintiffs state that they "would like an opportunity to conduct jurisdictional discovery to further prove that IRB systematically and continuously does business in this District based on the assertions that IRB sends direct mailings to private investigators in this District and has sent sales representatives to conferences in this District."  Dkt. No. 76 at ECF p. 26-27.  I find it unnecessary, however, to afford plaintiffs with an opportunity to conduct the requested jurisdictional discovery because, even if venue were proper in this District, I find that a discretionary transfer is warranted under 28 U.S.C. § 1404(a).

Section 1404(a) permits the Court to elect to transfer the action to a more appropriate venue "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 877, n.3 (3d Cir. 1995).  Under 1404(a), the Court has "broad discretion to determine, on an individualized case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer.  Jumara, 55 F.3d at 879-80.  Instead of deciding whether venue is proper in this District, I will, given the revised allegations in plaintiffs' amended complaint, "reconsider the weighing of the factors which would support a change of venue under 28 U.S.C. § 1404," as defendant suggests.  Dkt. No. 72-1

at ECF p. 5.

IRBSearch must show that "all relevant things considered, the case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotations and citation omitted). As the movant, defendant bears the burden of establishing the need for transfer. Jumara, 55 F.3d at 879; In undertaking the 1404(a) transfer analysis, "there is no definitive formula or list of . . . factors to consider," but the Court of Appeals' decision in Jumara identified public and private interests that courts may consider when deciding motions to transfer. Id.; see also Bennett v. Itochu Intern., Inc., No. 09-1819, 2009 WL 2569259, at *3 (E.D. Pa. Aug. 17, 2009) ("the defendant bears the burden of showing that, on the balance of identified public and private factors, considerations weigh 'strongly' in favor of transfer") (citation omitted). Plaintiffs contend that "the Jumara factors considered individually in the Court's October 24, 2013 decision weigh even more heavily against transfer this time around." Dkt. No. 76 at ECF p. 6. I disagree with plaintiffs for the following reasons.

### 1. Private Interests

Relevant private interests to consider in weighing whether venue transfer is appropriate include:

> [p]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara, 55 F.3d at 879 (internal citations omitted).

#### a. Parties' Forum Preference

Plaintiffs' choice of forum, in this matter, the Eastern District of Pennsylvania, typically

would be afforded significant deference.  See Jumara, 55 F.3d at 879 (observing that a plaintiff's choice of venue "should not be lightly disturbed").  "A plaintiff's choice is not conclusive, however, or the courts would not employ a multi-factor test, a defendant could never obtain a change of venue and § 1404(a) would be rendered meaningless."  Tyler v. Rental Serv. Corp., No. 01-4644, 2002 WL 192590, at *1 (E.D. Pa. Jan. 24, 2002).  When a plaintiff does not have a significant connection to the forum, this Court has discounted the weight afforded the plaintiff's choice of venue.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 ("When the plaintiff's choice is not its home forum, . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.") (citation and internal quotation omitted).

    Lisa Ostella and Frank Ostella are alleged to be citizens of New Jersey.  Dkt. No. 68 at ¶¶ 6, 9.  Lisa Liberi and Brent Liberi are alleged to be citizens of New Mexico.  Id. at ¶¶ 7, 8.  Only Berg is alleged to be a citizen of Pennsylvania.  Id. at ¶ 10.  Indeed, upon review of the allegations in the amended complaint, Berg's Pennsylvania citizenship is plaintiffs' only specifically identified contact with Pennsylvania.  Dkt,. No. 68 at ¶ 10.[5]

    Because only one of the five plaintiffs claims this District as his home forum, I find that plaintiffs' preference to litigate in the Eastern District of Pennsylvania is entitled to only moderate weight.

---

[5] Unlike in the initial complaint, see Dkt. No. 1 at ¶ 6 ("Plaintiff Philip J. Berg, Esquire is an adult individual with an office in the Commonwealth of Pennsylvania located at 555 Andorra Glen Court, Suite 12, Lafayette Hill, PA 19444-2531), the amended complaint no longer alleges that Berg maintains an office in the Eastern District of Pennsylvania.  Dkt. No. 68 at ¶ 10 ("Plaintiff Philip J. Berg, Esquire is a citizen of the Commonwealth of Pennsylvania, who, at all times material to this action, owned a motor vehicle registered with the Pennsylvania Department of Transportation . . . and has held a driver's license issued by PennDot.").  However, along with their response to defendant's motion, plaintiffs have submitted Berg's declaration in which he asserts that he "reside[s] in the County of Montgomery, Commonwealth of Pennsylvania, which lies within this district."  Dkt. No. 76-1 at ¶ 3.

### b. Location Where the Claims Arose

Plaintiffs conclusorily allege that "a substantial part of the events or omissions giving rise to the claim [sic] occurred in this district," Dkt. No. 68 at ¶ 14, and that "[t]he tortious acts of herein were committed, in part, in the Eastern District of Pennsylvania, the Central District of California, New Mexico, New Jersey, North Carolina and elsewhere, and Plaintiffs sustained injuries in said jurisdictions and others as a result of these tortious acts." Id. at ¶ 144. Upon further review of the allegations in plaintiffs' amended complaint, however, plaintiffs have pled only superficial ties between this District and the alleged events giving rise to their claims.

Plaintiffs' DPPA claim in Count One asserts that

> IRB knowingly used unlawful and improper access to motor vehicle information from Accurint . . . to obtain private and highly restricted personal information contained in Plaintiffs' motor vehicle records on at least five different occasions and willfully resold the data unlawfully . . . to the Sankeys . . . .

Dkt. No. 68 at ¶ 101. Plaintiffs do not allege that IRBSearch was in the Eastern District of Pennsylvania when it undertook the conduct alleged in Count I. Instead, in paragraphs 67, 70 and 71, plaintiffs allege that IRBSearch, from an unspecified location, provided reports containing information pertaining to Berg to the dismissed Sankey defendants on May 20, 2009 "and on other dates." Dkt. No. 68 at ¶ 67, 70, 71. The dismissed Sankey defendants are located in California. Dkt. No. 1 at ¶ 9-11. Further, plaintiffs do not specifically allege that IRBSearch obtained information pertaining to Berg from an entity located in the Eastern District of Pennsylvania. Indeed, IRBSearch is alleged to have obtained the information in question from Accurint, which is a Florida corporation. Id. at ¶ 8. None of the conduct alleged to give rise to the claim set forth in Count One is specifically alleged to have occurred in the Eastern District of Pennsylvania.

In Count Two, plaintiffs allege that IRBSearch "created and sold" information in "background consumer and comprehensive reports on Plaintiffs" that "contained untruthful and false information, including names, addresses, dates of birth, social security numbers, criminal data, credit data and other private information."  Dkt. No. 68 at ¶ 110.  However, nowhere in their amended complaint do plaintiffs allege that IRBSearch was in the Eastern District of Pennsylvania when it created or sold the information in question.

In Count Three, plaintiffs allege that "the publications containing [their] private and confidential information and the false data [were] published by Accurint to IRB and IRB to Neil Sankey by and through Todd Sankey and The Sankey Firm's IRB account . . . "  Id. at ¶ 121.  They allege that the publications were "defamatory by innuendo,"  Id. at ¶ 120 and that IRB is "still to this date selling Plaintiffs' private confidential information with the false data by and through hundreds, if not thousands of other data brokers, affiliates, resellers, etc."  Id. at ¶ 121.  Here again, plaintiffs include no allegations that the publications in question were created, sold or otherwise had any specific connection to the Eastern District of Pennsylvania.

In Count Four, plaintiffs contend that "IRB violated [their] privacy rights and Cal. Civ. Code. § 1798.53 by intentionally illegally and willfully accessing, disclosing, selling and distributing Plaintiffs' privileged primary identifying and highly restricted personal information, and other confidential information . . . ."  Dkt. No. 68 at ¶ 132.  They assert that IRB "wilfully obtained [the information] from Accurint," that they "resold [it] to the Sankeys" and that it "is being republished daily since the date the reports were sold as the information is maintained still on the Internet and updated and sent out through RSS feeds."  Id. at ¶ 133.  Plaintiffs do not specifically allege, however, that IRB obtained the information from Accurint within the Eastern District of Pennsylvania, compiled the information in the Eastern District of Pennsylvania, sold

the information to the Sankeys while the Sankeys were in the Eastern District of Pennsylvania or that the information is being accessed from the internet by computer users within the Eastern District of Pennsylvania.  Indeed, plaintiffs allege no specific connection between the facts supporting their claim under § 1798.53 of the California Information Practices Act claim and the Eastern District of Pennsylvania.

In Count Five, plaintiffs contend that

> IRB violated [their] privacy rights and Cal. Civ. Code. § 1798.83 by intentionally accessing, disclosing, and distributing Plaintiffs' privileged confidential private and highly restricted personal data contained in, and obtained from Plaintiffs' motor vehicle reports which IRB knew was obtained from motor vehicle records and maintained by state and/or federal agencies, to unauthorized third parties.

Dkt. No. 68 at ¶ 146.  It is in this Count that plaintiffs make the conclusory allegation that "[t]he tortious acts of herein were committed, in part, in the Eastern District of Pennsylvania . . . " and that "Plaintiffs sustained injuries in said jurisdiction[ ] and others . . . ." Id. at ¶ 144.  Plaintiffs, however, provide no specific allegations that would demonstrate that there is any connection between this District and the acts and injuries alleged in Count Five.

In Count Six, plaintiffs claim that

> IRB intentionally and willfully obtained Plaintiffs' private and highly confidential information from their motor vehicle reports maintained by the Department of Motor Vehicles in California, New Mexico, New Jersey, North Carolina, and Pennsylvania and resold Plaintiffs' private and highly restricted personal information . . . to third parties in violation of the DPPA and California Information Practices Act.

Dkt. No. 68 at ¶ 152.  Plaintiffs contend that "IRB purchased the data from Accurint . . . " and then sold the information to the Sankeys.  Id.  Plaintiffs contend that "the third parties, and others the reports of Plaintiffs were supplied to, published Plaintiffs' private and highly restricted

personal identifying information . . . all over the Internet repeatedly." Id. at ¶ 153. Plaintiffs do not allege, however, that this District had any connection to the transactions between IRBSearch and Accurint or the transactions between IRBSearch and the Sankeys.[6]

Finally, in Count Seven, plaintiffs allege that "IRB negligently and willfully sold Plaintiffs' reports containing Plaintiffs' private and highly restricted personal information obtained from department of motor vehicles [sic] to unauthorized third parties who did not have any legal entitlement." Dkt. No. 68 at ECF p. 36. Plaintiffs do not allege that IRBSearch sold plaintiffs' information to third parties in this District. Nor do they allege that IRB purchased the information in question from entities located in this District.

The only specific allegations in plaintiffs' amended complaint that have even a tenuous connection to the Eastern District of Pennsylvania are as follows. First, plaintiffs allege that after they "learned the reports sold on them originated with Accurint[,] Mr. Berg communicated with Accurint in February, March, April and May 2010." Id. at ¶ 78. Although they have submitted Berg's declaration that he lives in Montgomery County, plaintiffs do not allege that Berg initiated these communications from a location in the Eastern District of Pennsylvania. Nor does this allegation link directly to IRBSearch, the only remaining defendant. Second, plaintiffs allege that "Berg sent a subpoena to IRB on April 3, 2012," id. at ¶ 79, and that "[o]n April 22, 2012, Mr. Berg received objections to the subpoena pursuant to Fed. R. Civ. P. 45 from IRB." Id. at ¶ 80. Plaintiffs do not allege that Berg sent the subpoena from the Eastern District of

---

[6] Indeed, even if Accurint purchased motor vehicle records from Pennsylvania, plaintiffs do not allege that Pennsylvania maintains any motor vehicle records in this District. As defendant argues, "the affidavit of Mr. Berg actually contradicts that any events occurred in the district, but rather suggest[s] that crucial to his individual case are events that may have happened with the Pennsylvania Department of Motor Vehicles. IRBsearch understands that such state agency is located in Harrisburg, Pennsylvania," which is in the Middle District. Dkt. No. 79 at ECF p. 5.

Pennsylvania or that he received the objections to the subpoena at an address within the Eastern District. Even assuming arguendo that he did, Berg's mailing of the subpoena and receipt of IRB's objections are not causally related to any alleged harm that plaintiffs are alleged to have suffered. Instead, these allegations go only to plaintiffs efforts to uncover the source of the allegedly false information that they claim has caused their alleged injuries. No other actions or events set forth in the amended complaint are alleged to have any connection to the Eastern District of Pennsylvania.

In contrast, as defendant argues,

> [t]he entirety of Plaintiffs' complaint now [turns] on the access permitted violations of the Driver Privacy Protection Act . . . committed by the Sankey Firm of IRB[S]earch's databases. Plaintiffs' complaint alleges that the Sankey Firm had access to IRB[S]earch's servers and databases and misappropriated for unpermitted purposes confidential information of the Plaintiffs. The facts are undisputed that the access to and delivery of such data did not occur in the Eastern District of Pennsylvania.

Dkt. No. 79 at ECF p. 4-5. Defendants contend that "[t]here is no question that . . . access [to its servers and databases] is achieved at IRB[S]earch's offices in Tallahassee, Florida." Id. at ECF p. 4. In support of this contention, IRBSearch has submitted an affidavit from its manager, James Harris, who avers that "IRBSearch has only one business location . . . in Tallahassee, Florida," from where it runs its website. Dkt. No. 73 at ¶ 2. Harris asserts that "IRBSearch never had any contacts with Mr. Berg in the Eastern District of Pennsylvania." Id. at ¶ 10. Further, he contends that "IRBSearch has not contacted any officials to purchase DPPA protected information from California, New Mexico, New Jersey, North Carolina or Pennsylvania. Purchasing of DPPA data from state officials is not an effort or activity that IRBSearch is involved in." Id. at ¶ 15. He contends that "IRBSearch has no employees in the state of Pennsylvania," id. at ¶ 7, "has no assets in the state of Pennsylvania," id. at ¶ 4, "owns no

-13-

property anywhere in Pennsylvania and does not, nor has it ever, maintained a presence in Pennsylvania." Id. at ¶ 3.

"[C]ourts consistently hold that a '[plaintiff's] choice is deserving of less weight where none of the operative facts of the action occur in the forum selected by the plaintiff.'" Eagle Traffic Control v. James Julian, Inc., 933 F. Supp. 1251, 1259 (E.D. Pa.1996), quoting Nat'l Mortgage Network, Inc. v. Home Equity Ctrs., Inc., 683 F. Supp. 116, 119 (E.D. Pa.1988). Because plaintiffs provide no facts to support their allegations that their claims arose out of conduct occurring in this District, I find that this factor weighs heavily in favor of transfer.

### c. Convenience of the Parties

Defendant contends that this District is an inconvenient forum because it "is organized in Florida" and "does not have any storefronts or warehouses in Pennsylvania," its "contact with the forum state is limited to users of its Web site." Dkt. No. 72-1 at ECF p. 10.

With respect to plaintiffs, I find that Lisa and Brent Liberi, who are alleged to be citizens of New Mexico, id. at ¶¶ 7, 8, cannot argue that this forum is more convenient for them than the Northern District of Florida. Relying on Berg's declaration, submitted along with plaintiff's response to defendant's motion, in which he asserts that he "reside[s] in the County of Montgomery, Commonwealth of Pennsylvania," Dkt. No. 76-1 at ¶ 3, I find that this District would be convenient to him. Lisa and Brent Liberi Lisa and Frank Ostella are alleged to be citizens of New Jersey. Dkt. No. 68 at ¶¶ 6, 9. Plaintiffs argue that the Ostella's "burden is minimal i[f] the case remains here," and assert that "Frank Ostella will be forced to drop his lawsuit if the case is transferred to Tallahassee." Dkt. No. 76 at ECF p. 10. In support of their argument that this forum is inconvenient for the Ostellas, plaintiffs cite the costs of time off from work and babysitting for the Ostellas' children. Id. But the Ostellas will incur some costs for

time spent away from work and babysitting regardless of whether the case remains here or is transferred to Florida.

On balance, I find that this factor is neutral, as it is an inconvenient forum for the defendant and is the more convenient forum for only three of the five plaintiffs.

### d.     Availability of Non-Party Witnesses for Trial

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879.  Of particular concern, then, are fact witnesses who may not appear of their own volition in the venue at issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45.  See ADE Corp. v. KLA–Tencor Corp., 138 F. Supp. 2d 565, 569 (D. Del. 2001).  However, the unavailability of subpoena power does not, by itself, establish the unavailability of non-party witness given that non-party witnesses may be voluntarily willing to testify.  See Brenner v. Consolidated Rail Corp., No. 09–cv–1574, 2009 WL 2710241, at *3 (E.D. Pa. Aug. 26, 2009); ADE Corp., 138 F. Supp. 2d at 570 ("Previous decisions in this court have suggested that the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed.").  Neither defendant nor plaintiffs contend that there is a non-party witness who will be actually unavailable for trial or who will be

Potential non-party witnesses who have been identified are scattered through various states including Pennsylvania, Florida, New Jersey, New York, New Mexico, California, and North Carolina. See Dkt. No. 73 at ¶ 16; Dkt. No. 76 at ECF p. 10.  There is a risk of non-appearance at trial of non-party witnesses whether transfer is granted or denied.  And even if a non-party is unwilling to appear voluntarily, "at least a deposition may be compelled by a court with jurisdiction over the recalcitrant witness, and that deposition may be used at trial.  While

deposition testimony is not a complete substitute for live trial testimony, . . . it is a fallback that in almost all instances will prevent a miscarriage of justice." Simms v. Thomson Reuters Tax & Accounting, Inc., No 10-904-LPS, 2011 WL 4501225, at * (D. Del. Sept. 28, 2011), citing In re DVI Inc., No. 03-12656 MFW, 2004 WL 1498593, at *2 (D. Del. June 23, 2004).  Indeed, plaintiffs point out that the Northern District of Florida "cannot compel Orly Taitz and the Sankeys to appear by subpoena pursuant to Federal Rule of Civil Procedure 45," but contend that "[v]ideotaped depositions will suffice" for Orly Taitz and Neil Sankey, Todd Sankey and the Sankey firm.  Dkt. No. 76 at ECF p. 10.  Overall, I find this factor is neutral in the transfer analysis.

     e.  **Location of Books and Records**

  IRBSearch's books and records on its interactions with the Sankey Firm, Accurint and/or LNRDMI, and any state motor vehicle departments are located in the Northern District of Florida.  Dkt. No. 79 at ECF p. 6.  Plaintiffs concede that the location of books and records is not a significant factor in this case.  Dkt. No. 76 at ECF p. 24.  I find that the location of books and records is also a neutral factor.

    2.  **Public Interests**

  Public interests to consider in weighing whether venue transfer is appropriate include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, at 879–80.

     a.  **Enforceability of Judgment**

  There is no suggestion that a judgment against IRBSearch would be unenforceable in

either the Eastern District of Pennsylvania or the Northern District of Florida. This factor is neutral.

#### b. Practical Considerations

I should also consider "practical considerations that could make the trial easy, expeditious, or inexpensive." Jumara, 55 F.3d at 879. There is no strong evidence that either forum would make a trial easy, expeditious, or inexpensive. Indeed, Pennsylvania makes the trial easier for Berg and, perhaps, the Ostellas. Florida would make the trial easier for IRBSearch. I find that this factor is neutral.

#### c. Administrative Difficulties of Getting Case to Trial

Next I consider the "relative administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879. Absent argument regarding an imbalance in the caseload between this District and the Northern District of Florida, I find that this factor is neutral.

#### d. Local Interests and Public Policies of the Fora

Florida has an interest in this case because IRBSearch is organized in Florida. Pennsylvania has an interest in this action given that one plaintiff – Berg – is a citizen of Pennsylvania. However, plaintiffs no longer assert a claim pursuant to the Commonwealth's consumer protection and deceptive trade practice statute. As they point out in their response to defendant's motion, "[t]he only state claims remaining are brought under California Law – not Pennsylvania law and not Florida law." Dkt. No. 76 at ECF p. 26. And while plaintiffs continue to assert claims pursuant to the California Information Practices Act, this matter does not involve any citizens of California and the relevant question is not whether California has an interest in this action. Instead, the question is whether Florida's interests in this case outweigh Pennsylvania's interests in this case. On balance I find that this factor is neutral.

### 3. Conclusion Regarding Transfer Considerations

In my view, the connections of this case to this District are so minimal that I cannot justify maintaining it here. Overall, only plaintiffs' choice of forum weighs against transfer and I find that this factor is entitled to only moderate weight. On the other hand, all of plaintiffs' claims arise out of transactions involving access to IRBSearch's databases "achieved at IRBsearch's offices in Tallahassee, Florida," Dkt. No. 79 at ECF p. 4. Defendant has shown that plaintiffs have not alleged that their claims have sufficient connections to this District such that I should find that this factor weighs in favor of maintaining this action here. Indeed, this factor weighs in favor of defendant's requested transfer to the Northern District of Florida. See Ferens v. John Deere Co., 494 U.S. 516, 529-30 (1990), citing Gulf Oil, 330 U.S. at 508-09 (holding that the burden of jury duty should not be placed on citizens with a remote connection to the lawsuit). All other factors, including convenience of the parties, convenience of non-party witnesses, location of evidence, administrative difficulties and local interests, are neutral. Because I find that the public and private interest factors in combination weigh in favor of transfer, the Court will exercise its discretion and transfer this matter to the Northern District of Florida.

An appropriate Order follows.